UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | NO. 3:19-CR-145 |
| v. | ) | |
| | ) | JUDGE VARLAN |
| RICHARD GRAHAM | ) | |

**UNITED STATES' SENTENCING
MEMORANDUM AND MOTION FOR UPWARD VARIANCE**

The United States of America, by the United States Attorney for the Eastern District of Tennessee, submits the following sentencing recommendations with respect to the defendant, Richard Graham. For the reasons set forth herein, the United States respectfully submits that a sentence within the Guidelines range is not appropriate and an upward variance above the range is appropriate in this case.

**STATEMENT OF FACTS**

*1. Overview*

The defendant and his partner and co-defendant, Dusty William Oliver (Oliver), are serial rapists. Worse still, they preyed on homeless, drug-addicted, heterosexual males, who were unlikely to make a report to law enforcement. The defendant and Oliver, after befriending their victims, would take them to the Great Smoky Mountains National Park (GSMNP). They would lead the victims up unfamiliar trails in the pitch darkness only to rape them from the front and back in unison. The defendant and Oliver got away with perpetrating aggravated sexual abuse on their two victims for years until a tenacious investigation by special agents with U.S. Department of Interior National Park Service for GSMNP ended their sexual crimes.

The first outcry was made by RP in June of 2012. RP was homeless, heavily intoxicated, walking along Chapman Highway[1] when he was approached by the defendants in their car. Defendants offered to take him to Bristol to see the car races. RP was so intoxicated he accepted even though he knew races did not happen in that season.

The defendants did not take RP to Bristol instead they went to GSMNP. It was dark outside and they insisted upon walking an unlit trail. While walking RP was sandwiched between the defendants. Upon arriving at a large rock, one of the defendants sat on the rock in front of RP. The other stood close behind RP. RP was forced to preform fellatio on the defendant in front of him while the defendant behind him forced his penis into RP's anus even though he pled for them to stop. RP is unsure which defendant di what to him. After the rapes, the defendants drove RP to a gas station and left him there. RP called the police and reported the rapes.

Because of his intoxication level, RP remembers few details about his assailants. A rape kit was done on RP and a sample was obtained. However, with no other evidence the investigation stalled.

In November of 2015, CN, the defendant and Oliver's second male victim, called 911 reporting he had just been raped by the defendants. CN, an admitted homeless and drug-addicted young man, reported he was walking along Chapman Highway[2] when the defendants approached him in their car. The three began chatting and the defendants asked if CN wanted to go with them to the GSMNP. CN accepted.[3] CN had a clear memory of being raped and was able to

---

[1] The area on Chapman Highway where the two victims were approached by the defendants is a known area where the homeless walk to and from the Knoxville Area Rescue Mission (KARM).
[2] CN was walking in the same vicinity as RP when approached by the defendants.
[3] CN was high on drugs when he first encountered the defendants.

describe tattoos, clothing of the defendants and two different gas stations where they had stopped along the way to GSMNP.

CN reported that around 8:30 pm the three walked up an unlit trail. CN was sandwiched between the two defendants and was unable to see. Without CN's consent, the defendant in front of him forced him to preform fellatio while the defendant behind him forced his penis into CN's anus. CN told them to stop but did not fight the defendants, as he had been a victim of an attack in the past where the attacker had stabbed him multiple times. Although CN had gotten good looks at both defendants earlier in the daylight, he was unsure which defendant did what to him during the rapes due to the darkness.

After raping CN, the defendants drove CN to the intersection of Kingston Pike and Highway 129 in Knoxville Tennessee, where they dumped him out of their vehicle. CN walked to the University of Tennessee Hospital and reported he had been raped. A rape kit was performed on CN, spermatozoa was found and sent for DNA analysis.

Special agents with GSMNP were called. Realizing they potentially had serial rapists in the area, the agents re-opened the initial investigation involving RP.

The defendant and Oliver were identified based on the information provided by CN. The DNA found in both the rape kits corroborated the involvement of the defendant in both rape cases.

Oliver was debriefed after his change of plea. Oliver stated that he began dating the defendant in 2008 after being sexually assaulted by the defendant. Oliver admitted that in 2012 he and the defendant began driving around Knoxville looking for homeless men who appeared to be drunk or under the influence of narcotics with whom they could have sex.

***Impact upon defendants' victims***

Both of the victims in this case have been profoundly impacted by their attacks. Both have also maintained contact with the government during the prosecution process which has taken years. Both plan on being present at the sentencing hearing and may address this Court. It is important to both men that they see the defendants brought to justice

## ANALYSIS

1. ***The factors stated in 18 U.S.C. § 3553(a)(2) favor the imposition of an upward variance.***

As the Court and the defendant are aware, the sentence to be imposed should be "sufficient, but not greater than necessary," to accomplish the following as set forth in 18 U.S.C. § 3553(a)(2):

    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B) to afford adequate deterrence to criminal conduct;

    (C) to protect the public from further crimes of the defendant.

Upon reviewing the factors in 18 U.S.C. § 3553(a), the Court may choose to go the route of a sentence above the advisory Guidelines range. As the Supreme Court has recognized, a sentence outside the Guidelines range may be imposed if "the Guidelines sentence itself fails to properly reflect § 3553(a) considerations." *Rita v. United States*, 551 U.S. 338, 351 (2007). Further, in *Pepper v. United States*, 131 S. Ct. 1229 (2011), the Court emphasized that 18 U.S.C. § 3661 expressly authorizes sentencing courts to consider, "without limitation, any information concerning the background, character and conduct of the defendant, unless otherwise prohibited by law." *Id*. at 1240.

The Sixth Circuit has noted that U.S.S.G. §4A1.3 (Departures Based on Inadequacy of Criminal History Category) is not the outer bounds of a court's authority to grant an upward

variance. *United States v. Herrera-Zungia*, 571 F.3d 568, 583 (6th Cir. 2009) Rather, a Court's authority is "broader" under the factors listed within 18 U.S.C.§ 3553(a). *Id*. In fact, a district court "always can impose an above-Guidelines sentence so long as it is reasonable in light of the factors set forth in 18 U.S.C. 3553(a)." *Id*. The only requirement is that, "in light of all the facts and circumstances of the particular case before it, whether the range in question is appropriate to the case." *United States v. Brown*, 371 F.3d 854, 860 (6th Cir. 2004).

This is an extremely unique case, outside the heartland of anything contemplated by 18 U.S.C. § 3553(a). As such, an upward variance is needed to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford deterrence and most importantly protect the community from further sex crimes by this defendant.

  **a.** *A sentence above the applicable guidelines range would reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the defendant.*

The sentence to be imposed should be sufficient, but not greater than necessary, to reflect the seriousness of the offense, to promote respect for the law and to provide just punishment. The defendant is a serial rapist. Defendant has raped two men that can be proved. Rape is a heinous crime especially when targeting, as the defendant and his partner Oliver, did, vulnerable victims.

The defendant has no respect for the law or for the men he raped! This combination is extraordinarily dangerous to the community. He and his partner, Oliver targeted the weak and downtrodden for their own sexual gratification. It was a game for them.

Just punishment for the defendant is also extremely important. In trying to find a just sentence a suitable balance must be found between the victims' life long sentence imparted by the defendant and his partner Oliver and the length of imprisonment the defendants should serve.

The victims had no choice in being raped by the two defendants, and will for the rest of their lives be haunted by the nightmare the defendant and Oliver chose for them. Interestingly the defendant discloses in his PST about being raped in the 9th grade. Defendant said since the aggressor was a star football player he did not report being raped and dropped out of school. (PSR, pg. 11, ¶ 65) Defendant then goes on to say that he didn't even realize that he had done to his victims was what had been done to him at school. (PSR, pg. 11, ¶ 29) Defendant, even though allegedly being violently sexually attacked not only lacked even a scintilla of empathy for any other person who endured the same thing but victimized his own victims even more violently with two attackers.

### b. *An upward variance would afford adequate deterrence to criminal conduct.*

Section 3553 also guides the Court to consider the need for a sentence that affords adequate deterrence to criminal conduct. From the standpoint of sentencing, deterrence takes two forms: (1) specific deterrence, to deter similar crimes by the defendant who is being sentenced, and (2) general deterrence, to deter criminal actions by others who may contemplate committing similar offenses. An upward variance is consistent with both purposes.

The defendant is devoid of any remorse for his actions as evidenced by his raping vulnerable men. The fact that the defendant and his partner Oliver raped in tandem shows they enjoyed the bullying effect of the act, yet were too afraid to rape another man on their own. It is imperative the defendant know his raping vulnerable human beings will not be tolerated. Although this defendant does not have a criminal history per se, he chose one of the worst crimes when entering into his life of crimes. A lengthy sentence should send a message that each of his victims is important and a guidelines range sentence for his crimes is simply not sufficient for the violence he and his partner Oliver foisted on their victims.

In cases involving sexual violence, there is a critical need for general deterrence. A lengthy sentence will send a message to would-be sex offenders to think again before committing a crime of sexual violence.

### c. *A upward variance will ensure the protection of the public from further crimes by the defendant.*

Most importantly, our community needs to be protected from the acts of this defendant. Vulnerable homeless men do not need to be afraid to accept random acts of kindness for fear of being brutalized. People in the community and tourists who come to visit should not have to be concerned about attacks occurring on hiking trails in GSMNP. This defendant and his partner, Oliver raped each man physically two times and emotionally raped them for their entire lives.

The public needs to be protected from this man.

### d. *Unique factors of this case not contemplated by the Guidelines.*

This is a unique case. In looking at the totality of the circumstances surrounding the case, it is clear this case is outside of the heartland of cases and an upward variance is required. The guidelines range, as initially benchmarked at 168-210 months imprisonment, is not appropriate based on the particular facts of this case. *See Peugh v. United States*, 133 S. Ct. 2072, 2080-81, 186 L. Ed. 2d 84 (2013). The guidelines range simply does not capture the entire picture in this case. First, there is no consideration of the defendants' serial pattern of conduct. Second the guidelines do not take into account the diabolical process the defendants had for choosing their victims. Since neither of the defendants are large in stature, they carefully picked specific characteristics and circumstances to ensure victims they could control. The defendant's partner Oliver, admitted he and the defendant, specifically trolled Chapman Highway for homeless, drug-addicted men. Defendant and his partner, Oliver, figured this type of man would have little dignity and banked on the premise that a homeless man would not think enough of himself to

report the rapes to law enforcement. The defendant and his partner, Oliver, drove for miles, taking the intended victims to a pitch black trail in GSMNP, again going with the probability that the victim would not run away or try fight them off because it was dark and they were unfamiliar with the park. Third and most importantly, the guidelines range does not begin to contemplate that each victim was gang-raped, forced to perform oral sex on one defendant while being penetrated anally from behind by the other.

## *CONCLUSION*

Only an above-guidelines sentence would be of sufficient severity to reflect the seriousness of the defendant's offenses, promote respect for the law, and provide just punishment. A lengthy sentence is needed in light of the facts surrounding the case and would be consistent with the goals of 18 U.S.C. § 3553.

Respectfully submitted,

Douglas J. Overbey
United States Attorney

By: <u>s/ Jennifer Kolman</u>
Jennifer Kolman
Assistant United States Attorney
800 Market Street, Suite 211
Knoxville, Tennessee 37902
(865) 545-4167
jennifer.kolman@usdoj.gov
GA Bar # 427930